## National Bank of Denison v. Ellen M. Danahy, Ex'x.

1. CONTRACTS—*To be Interpreted by the Law of the Place Where Made.*—Personal contracts are to be interpreted by the law of the place where they are made.

2. SAME—*Remedies on—How Regulated.*—Remedies on contracts are to be regulated and pursued according to the law of the place where the action is instituted, and not by the law of the place where the contract is made.

3. STATUTES OF LIMITATION—*Construction of.*—Statutes of limitation are to be considered as falling within these rules except where provision is otherwise made by the statute. So, where an action is brought in one State upon a contract made in another, a plea of the statute of the place where the contract was made is not a good bar to the action, but a plea of the statute of the State where the action is brought, is.

National Bank of Denison v. Danahy.

4.  Same—*Operates Upon the Remedy Alone.*—A statute of limitation operates upon the remedy. The law of the *forum* and not the law of the *situs* of the contract, controls.

5.  Same—*Resident Makers and Non-resident Payees of Promissory Notes.*—When the maker of a promissory note resides in this State both at the time when the note is given, and when it falls due, while at both times the payee resides in a foreign State, and the action is brought in this State, the statute of the foreign State has no application.

6.  Evidence—*Bearing Upon the Disposition of Partnership Assets.* —Upon the trial of an action by the payee of a promissory note made by a partnership against the executrix of the surviving partner, a petition filed in a court of record by the other partner in his lifetime, properly verified, for the purpose of closing up the partnership affairs, showing that certain property was pledged to the payee as collateral security for the payment of the note sued, and subsequently sold, and the proceeds applied upon the partnership debts, is competent as bearing upon the question as to whether certain payments shown on the note were made by the partnership out of partnership assets, or by the other partner individually out of his own funds.

7.  Words and Phrases—*"When a Cause of Action Has Arisen."*— The words "when a cause of action has arisen," as they occur in the statute of limitations, are to be construed as meaning when jurisdiction exists in the courts to adjudicate between the parties upon some particular cause of action. if properly invoked; or, in other words, when the plaintiff has the right to sue the defendant in the courts of the State upon the particular cause of action without regard to the place where the cause of action had its origin.

8.  Attorney's Fees—*In Promissory Notes—When They Become Due.*—Where a promissory note provided that if it was not paid in full at maturity, and placed in the hands of an attorney for collection, the makers were to pay ten per cent additional on principal and interest due for attorneys' fees, *it was held* that such fees became due when, after non-payment at maturity, the note was placed in the hands of an attorney for collection, and could be recovered in the same suit.

Assumpsit, on promissory notes. Appeal from the Circuit Court of Kane County; the Hon. Charles A. Bishop, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed October 12, 1899. Rehearing denied April 12, 1900.

Wilber, Eldridge & Alden, attorneys for appellant.

James Maher, attorney for appellee.

Mr. Justice Higbee delivered the opinion of the court.
On August 7, 1896, appellant filed its claim in the County

Court of Kane County, against the estate of Daniel Danahy, deceased, based upon two promissory notes, one of which is as follows :

"$3,000.                    DENISON, TEXAS, August 21, 1891.

October 30, 1891, from date, without grace, we, or either of us, jointly and severally promise to pay to the order of the National Bank of Denison, three thousand dollars, for value received, at the National Bank of Denison, Texas, with interest at the rate of one per cent per month, from maturity until paid. If this note be not paid in full at maturity, and placed in the hands of an attorney for collection, then I or we agree to pay ten per cent additional on principal and interest due for attorneys' fees.

No. 2989.                        DANAHY & McDONALD."

The following indorsements were on the back :

" Dec. 22, 1891.   Paid $260$\frac{95}{100}$, being balance on State Nat'l Bank stock turned in by McDonald.

Dec. 22, '91.   Paid $1,000, being real estate turned in by McDonald."

This second note was for the sum of $600, was dated September 18, 1891, and became due November 1, 1891; in other respects it was similar to the first note, but it bore no indorsements.

Daniel Danahy and Donald J. McDonald were partners as contractors under the firm name of Danahy & McDonald, and in 1890 and 1891 were engaged in certain work on the Missouri, Kansas and Texas Railroad in the Indian Territory. The consideration for the above notes was money loaned by the bank to the firm of Danahy & McDonald, to be used by them in the transaction of the partnership business.

Danahy never lived in Texas. At the time the notes in question were given he resided in Aurora, Illinois, where he continued to live from that time until his death. About the time of the execution of the notes McDonald assigned and delivered to appellant as collateral security, ten shares of stock of the State National Bank of Denison, Texas. This stock was afterward sold by appellant for $1,360. Out of this amount the sum of $1,099.05 was applied by appellant to take up an open account of Danahy & McDonald, and the balance, amounting to $260.95, was credited

on the $3,000, as shown by the above indorsement. About December 22, 1891, McDonald also conveyed to the cashier of appellant certain real estate, and an indorsement of the value of the same was also made on said note. The real estate, however, was not sold until February 2, 1892, at which time appellant realized $1,000 from its sale. The notes not being paid at maturity, appellant, on the 20th day of December, 1892, commenced suit in the United States Circuit Court for the Northern District of Illinois, against Danahy and McDonald, obtaining service, however, upon Danahy alone. Upon the trial of the case a judgment was entered against Danahy for $3,340, but on appeal the United States Circuit Court of Appeals reversed the Circuit Court and remanded the case, for the reason that the declaration did not show the adverse citizenship of plaintiff and defendant, and therefore the court was without jurisdiction.

The case was redocketed in the Circuit Court, but on January 20, 1896, before it came to trial, Danahy died. The death of Danahy having been suggested, his executrix, Ellen M. Danahy, was substituted as defendant, and entered her appearance in the cause. She filed a plea in abatement, alleging that the court was without jurisdiction and that the action could not be maintained against her as executrix. On April 5, 1897, the suit was dismissed on motion of appellant, and shortly afterward appellant filed its claim in the County Court of Kane County as aforesaid. In that court the claim was disallowed, and appellant prosecuted its appeal to the Circuit Court of said county.

Upon the trial of the cause in the Circuit Court the court refused all the instructions offered by appellant, but gave one directing the jury to find the issues for appellee, and the jury having returned a verdict in accordance with such instruction, judgment was entered against appellant for costs.

Appellee relied entirely upon the statute of limitations of the State of Texas and introduced in evidence Art. 3205 of the statutes of that State, which is as follows:

" What Action Barred in Four Years.—There shall be

commenced and prosecuted within four years after the cause of action shall have accrued and not afterward, all actions or suits in court of the following description: 1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing." * * *

Appellant objected to the introduction of this section of the Texas statute, and the objection having been overruled, excepted to the ruling of the court.

The principal contention of appellant is that the court erred in admitting in evidence the above section of the statute of Texas, and in holding that the notes introduced in evidence were barred by same.

"It is a well settled rule that personal contracts are to be interpreted by the law of the place where they are made, and it is a rule equally well settled that remedies on contracts are to be regulated and pursued according to the law of the place where the action is instituted and not by the law of the place of the contract. The reason of this rule, according to Story, Judge, is obvious. 'Courts of law,' says he, 'are instituted by every nation for its own convenience and benefit. * * * As a rule, statutes of limitation are to be considered to fall within these remarks. In cases, therefore (except where provision is otherwise made by statute), where an action is brought in one country or State, upon a contract made in another, a plea of the statute of limitations existing in the place of contract is not a good bar, but a plea of the statute existing in the country or State where the action is brought, is. This rule is in conformity with the universal rule that as the statute operates merely upon the remedy, the law of the *forum*, and not the law of the *situs* of the contract, controls.'" Wood on Limitations, 2d Ed., Vol. 1, Sec. 8. See also McClunny v. Silliman, 3 Peters, 270; Townsend v. Jamison, 9 Howard, 407.

Under the above authorities the period of limitation fixed by the statute of limitations of this State must prevail in this case unless there is a provision of our statute directing otherwise.

Sec. 20 of our limitation act provides, "When a cause of action has arisen in a State or Territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon can not be maintained by reason of the lapse of

National Bank of Denison v. Danahy.

time, an action thereon shall not be maintained in this State." The question arises, what is meant by the phrase, "When a cause of action has arisen," as it occurs in the statute? In the case of Humphrey v. Cole, 14 Ill. App. 56, in referring to the construction to be put upon said phrase, the following language is used:

" In Hyman v. McVeigh, decided by the Supreme Court in 1878, reported in Chicago Legal News, Vol. 10, page 157, and mentioned among the unreported cases at the end of 87th Ill., the phrase in our statute, ' When a cause of action has arisen in a State or Territory out of this State,' was construed. And the court say the words, ' When a cause of action has arisen,' as they occur in the statute pleaded, should be construed as meaning, when jurisdiction exists in the courts of a State to adjudicate between the parties upon the particular cause of action, if properly invoked; or, in other words, when the plaintiff has the right to sue the defendant in the courts of the State upon the particular cause of action, without regard to the place where the cause of action had its origin."

In the case of Great Western Telegraph Co. v. Stubbs, 55 Ill. App. 210, it is said, " A cause of action arises against a party where he is."

From the above authorities it appears that a cause of action arises against a party at the place where he is at the time of the maturity of his obligation, and that therefore in this case the cause of action arose in the State of Illinois, and consequently the statutes of limitation of the State of Texas do not apply.

In Story v. Thompson, 36 Ill. App. 370, the case of Humphrey v. Cole, *supra*, and Hyman v. McVeigh, *supra*, are discussed, and this court there said it could not approve the decision in Humphrey v. Cole, *supra*, as, to hold the rule there announced, would be to entirely nullify section 83 of the limitation act. It is further there said:

" If a cause of action accrues or arises in all cases where the debtor resides, or may go, then the above section can have no practical value; Sec. 20 repeals it; but we do not so interpret it. * * * Both the maker of the note and the payee resided outside the State of Illinois when the

cause of action accrued, and till after the bar in the other State was established. The expressions of the Supreme Court in that case (Hyman v. McVeigh, *supra*,) and quoted in 14 Ill. App. *supra*, were made with reference to the facts in that case, but have no application here."

In the above case (Story v. Thompson) the payees of the notes sued on were residents of this State when the notes were made and when they became due, and the maker was a non-resident at both times, and it was therefore held that the notes were not barred by the statutes of this State, and that the maker could be sued in this State, although they would have been barred by the statute of limitations of the State in which he resided. The case before us, however, is not similar to any of those cited; for in this case, the maker resided in this State both at the time the notes were given and when they fell due, while at both of said times the payee resided in Texas; and the statute must therefore be applied to the facts as they exist here.

In the case of Berry v. Krone, 46 Ill. App. 82, the following language is used in reference to the limitation act:

" It will be seen that by the second paragraph of section 18 it is provided that the preceding provisions are not to apply to any case where neither debtor nor creditor resides in the State when the cause of action accrues. Section 20, then, applies to cases not covered by section 18; that is, to cases where both debtor and creditor were non-residents when the cause of action accrued. It can not be supposed that the legislature intended by section 20 to nullify and sweep away the provision contained in section 18, and yet this is what has been done, unless section 20 is construed to apply only to those cases which are, by the latter clause of section 18, carved out and excepted from its operation."

We are therefore of opinion from a consideration of the authorities, that the statute of limitations of the State of Texas was improperly admitted in evidence in this case.

Upon the trial of the case, appellant offered in evidence a copy of a petition, properly authenticated, filed by Daniel Danahy on December 9, 1891, in the Circuit Court of Jackson County, Missouri, against McDonald, for the pur-

pose of closing up their partnership affairs. The petition alleged, among other things, that McDonald had purchased ten shares of stock of the State National Bank of Denison, Texas, paying therefor the sum of $1,300 out of the partnership funds, and taking the title to the same in his own name, and that he had bought a one-third interest in certain real estate in Denison, Texas, for which he had used money of the partnership. The admission of this petition in evidence was objected to by appellee on the ground that it was incompetent and in no manner connected with the claim in the case. The objection was sustained by the court, and appellant excepted.

It appeared from the evidence that the property above mentioned was pledged to appellant as collateral security for the payment of the notes in question and an open account, and that the same was subsequently sold and the proceeds applied on the partnership debt. There was a question as to whether or not the payments on the $3,000 note shown by the indorsement thereon were made by the partnership or not. The petition should therefore have been admitted in evidence as bearing upon the question as to whether the payments were made by the partnership out of the partnership assets, or by McDonald individually out of his own funds.

The notes in question in this case each contained the provision that " If this note be not paid in full at maturity and placed in the hands of an attorney for collection, then I or we agree to pay ten per cent additional on principal and interest due for attorney's fees." The court, however, refused to admit any evidence upon the question of attorney's fees. This action of the court was erroneous. The amount of the fees, being a certain per cent of the principal and interest of the notes, was fixed, and could be determined by simple calculation. The payment of attorney's fees was made a part of the contract, and if appellant was entitled to recover at all in this suit, such fees became due when, after non-payment at maturity, the notes were placed in the hands of an attorney for collection, and if reasonable, could

be recovered in the same suit. Barton v. Farmers and Merchants National Bank, 122 Ill. 352.   ·   .

For the errors above indicated, the judgment in this case will be reversed and the cause remanded for another trial. Reversed and remanded.